# 24-2333

## United States Court of Appeals

### for the

### Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

— v. —

JUAN REYES and CATHERINE REYES,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

JEAN-CLAUDE MAZZOLA
MAZZOLA LINDSTROM LLP
*Attorneys for Defendants-Appellants*
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(646) 216-8300

C P COUNSEL PRESS    (800) 4-APPEAL • (383568)

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

Preliminary Statement ............................................................................. 1

Argument in Reply ................................................................................... 1

    Point I:   There is an Issue of Fact as to Whether the Reyeses'
             Mistaken Belief that the Lloyds' Bank Account Was Not
             Subject to U.S. Taxation ................................................................. 1

    Point II:  Appellee Misses the Point that 31 USC § 3717(e)(d)
             Includes the Word "Judicial." Thus, the Judiciary has an
             Independent Obligation to Determine Whether a Late
             Payment Penalty of "Up to 6%" is Appropriate. The
             District Court Should Have Exercised Such Discretion ................. 5

Conclusion ............................................................................................... 7

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*United States v. Bittner*,
 19 F.4th 734 (5th Cir. 2021) ..............................................................3, 4

*United States v. Kelly*,
 92 F.4th 598 (6th Cir. 2024) ..................................................................5


**Statutes & Other Authorities:**

31 USC § 3717(e)(2) ..........................................................................5, 6

31 USC § 3717(e)(d) ...........................................................................5

## Preliminary Statement

This brief is respectfully submitted on behalf of defendants Juan Reyes and Catherine Reyes in reply to the United States' appellee brief.

## Argument in Reply

**Point I:** **There is an Issue of Fact as to Whether the Reyeses' Mistaken Belief that the Lloyds' Bank Account Was Not Subject to U.S. Taxation.**

In the appeal brief, Dr. and Mrs. Reyes demonstrated, through their affidavits, that they believed the Lloyds bank account was not subject to U.S. taxation. The core issue presented, as acknowledged by the appellee, is that:

> Dr. Reyes incorrectly believed that dual citizens were not obligated to report income generated outside the United States because only "the country where the money was generated . . . has jurisdiction over that money," and that he would owe tax only if he brought that money into the United States.

Appellee Brief, pp.10-11 (ellipsis in original).

The appellee asks that this Court deem the Reyeses to have been reckless, as a matter of law, and that such was recklessness is tantamount to a willful failure to abide by their FBAR reporting obligations. It is the Reyeses' position, respectfully, that it should be for a jury to determine whether their incorrect belief, from which all other mistakes made by the Reyeses flow, was so reckless as to constitute a willful failure to abide by their tax reporting requirements.

The appellee has downplayed the unique facts and circumstances of the Reyeses' case. It is undisputed that the money was put into the Lloyds bank by Dr.

1

Reyes's parents to avoid confiscation by the Communist regime in Nicaragua. This was the Reyeses' mindset, if you will. Dr. and Mrs. Reyes simply didn't think the Nicaraguan-sourced money needed to be reported to the IRS:

> *Dr. Reyes:*
>
> My only understanding was that if you have an account outside the country where you are a citizen, that money belong, it's on the jurisdiction where the money was generated, and my understanding is the money was generated in Nicaragua. It was not in the jurisdiction for the United States.

(JA-253).

> *Mrs. Reyes:*
>
> *Q.* … Why didn't you report the income from your foreign account on your original return but you did on this amended return? … *A.* Why didn't we report it? Because it wasn't really ours. It was my in-laws' account.… From what I recall, this money was in Nicaragua and my in-laws put it into Lloyds [TSB Bank] because … they were concerned about the security of Nicaraguan banks so it was in that bank.

(JA-393-394).

It was this mindset – their incorrect belief that such moneys were not subject to U.S. taxation because it was Dr. Reyes's parents' money, totally earned outside the U.S. – that the appellee treats as being so objectively unreasonable as to constitute recklessness. While it was mistaken, however, it was not reckless. After all, the United States is the only major developed nation that taxes worldwide income earned by its citizens and legal residents.

In contrast to the taxpayer in *United States v. Bittner*, 19 F.4th 734 (5th Cir. 2021), neither Dr. Reyes nor Ms. Reyes are sophisticated business professionals. Appellee argues that "the Reyeses are multimillionaires and highly educated professionals with access to skilled advice on tax and legal questions." (Appellee Brief, p.34). This is a grotesque misrepresentation of the record. Indeed, their deposition transcripts and other documents in the record demonstrate their utter lack of sophistication. Mrs. Reyes is a high-school graduate. She started, but did not complete college, and has worked in her husband Dr. Reyes's office for fifty years handling billing, never having had any other job. (JA-365-366). Dr. Reyes acknowledged that with respect to matters of money, it simply was not his concern (JA-163), and indeed with regard to the holdings in the Lloyds account, he is an "ignoramous" in such matters. (JA-166). Moreover, the Reyeses' taxable income is itself demonstrative of a lack of such financial acumen as is insinuated by the appellee: After amendment to account for interest earned from the Lloyds account, the Reyeses earned $93,855 in 2010 (JA-650); in 2011 it was $70,052 (JA-660); and in 2012, they earned $84,308 (JA-673).

The appellee notes that the foreign account held a substantial portion of Dr. and Mrs. Reyes's assets, "despite neither person having any personal or business connection to Switzerland." (Appellee brief, p.14). Contrary to the appellee's suggestion that this is indicative of a reckless *mens rea*, however, this fact further

3

demonstrates their lack of financial sophistication. They had no other significant assets, other than their home, the premises where Dr. Reyes currently maintains his medical office and a property in the Bronx where he formerly had a medical office but which has been undergoing renovations in order to eventually be rented out. (JA-128, 131, 407-408). In fact, the reason that the Reyeses sought to transfer the money from the Lloyds account to the United States was so that they could renovate the Bronx property. (JA-541). These are hardly sophisticated financial professionals. It was when they sought to transfer the money to the U.S. that they first learned that they had an obligation to report the funds, and they amended their tax returns accordingly. (JA-266, 269, 282).

The appellee has totally failed to address the import of the Bittner case, with regard to the heavy weight that court placed on the fact that the taxpayer was a sophisticated business professional in determining that he was reckless in his disregard of his reporting obligations. Here, the appellee urges that the Reyeses instructed Lloyds not to hold U.S. securities so that they would not be subject to U.S. taxation. (Appellee brief, p.18). Yet this is entirely consistent with the Reyeses' good-faith, albeit incorrect, belief that moneys that originated outside of the U.S. and that had no connection to the U.S. were not subject to U.S. taxation. In any event, the document that the Reyeses signed was pro forma (See JA-624-625), and though it states that Lloyds is "authorized" to sell any U.S. securities and

to not purchase any U.S. securities, there is nothing to indicate that the account even held U.S. securities. Thus, this factor, considered relevant by the Sixth Circuit in *United States v. Kelly*, 92 F.4th 598, 604 (6th Cir. 2024), is not relevant here.

The other acts and omissions that the appellee harps on – having signature authority for decades, meeting with Lloyds bank representatives and discussing accessing the funds, instructing that mail be held, using a credit card, and not telling their accountant of the account – all of these factors naturally flow from their mistaken belief that the foreign account, originally Dr. Reyes's parents' money, was not subject to U.S. taxation.

For the foregoing reasons, and those further reasons set forth in the opening appeal brief, it is respectfully submitted that the issue of whether or not Dr. and Mrs. Reyes were reckless must be decided by a jury.

**Point II:     Appellee Misses the Point that 31 USC § 3717(e)(d) Includes the Word "Judicial." Thus, the Judiciary has an Independent Obligation to Determine Whether a Late Payment Penalty of "Up to 6%" is Appropriate. The District Court Should Have Exercised Such Discretion.**

As noted in the appeal brief, 31 USC § 3717(e)(2) does not just provide that the executive branch may determine the rate of the penalty that may be imposed, but that the judicial branch also has such authority: (emphasis added)

> (e) The head of an executive, ***judicial***, or legislative agency shall assess on a claim owed by a person—

5

*\*\**

> (2) a penalty charge **of not more than 6 percent** a year for failure to pay a part of a debt more than 90 days past due.

Sidestepping the clear provision vesting the judiciary with authority to assess a penalty of up to 6%, the appellee argues that there is no inconsistency here because Treasury had such authority as well – to impose a penalty of up to 6% – and that by doing just that, appellee's imposition of the maximum penalty, reduced to judgment, is consistent with the statute. But, as demonstrated in the appeal brief, the fact of the matter is that the statute also vests such authority in the judiciary. Here, the appellee has –without considering the facts and circumstances of the case and the hardship to the Reyeses – issued a rote penalty, the absolute maximum. But as the judicial branch also has authority to impose a lesser penalty, pursuant to § 3717(e)(2), *i.e.*, "not more than 6%," the Reyeses respectfully submit that the district court erred in holding that it had no authority to impose a lesser rate. Accordingly, and for the reasons set forth in their original brief, the Reyeses request that such discretionary power be exercised by this Court, or that the case be remanded so that the district court may exercise its discretion under § 3717(e)(2) to impose a lesser rate.

**Conclusion**

For all the foregoing reasons, the judgment rendered herein on August 5,

2024 must be vacated, and the matter remanded for trial and, if warranted, a

discretionary determination of the appropriate late payment interest rate to apply.

Dated:      New York, New York
            August 13, 2025

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

*/s/ Jean-Claude Mazzola*
Jean-Claude Mazzola
1350 Avenue of the Americas, 2d Fl.
New York, New York 10019
646.250.6666
jeanclaude@mazzolalindstrom.com
*Attorneys for defendants-appellants*
*Juan Reyes and Catherine Reyes*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 1,514 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
August 13, 2025